| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>Arapahoe County Justice Center<br>7325 S. Potomac St.<br>Centennial, Colorado 80112<br>303-649-6355 | DATE FILED: August 10, 2017 8:09 PM<br>FILING ID: 8CCA7C19829F5<br>CASE NUMBER: 2017CV31788 |
| LANDING AT CHERRY CREEK CONDOMINIUM ASSOCIATION, Inc., a Colorado nonprofit corporation,<br><br>**Plaintiff,**<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a corporation.<br><br>**Defendant.** | Case No.: |
| **Attorney for Landing at Cherry Creek Condominium Association, Inc.:**<br>Christopher N. Mammel, Esq., #10980<br>Merlin Law Group, P.A.<br>999 18th Street, Suite 3000<br>Denver, Colorado 80202<br>Tel: (303) 357-2374<br>Fax: (303) 357-2377<br>E-mail: cmammel@merlinlawgroup.com | |
| **COMPLAINT TO ENFORCE APPRAISAL AND FOR BREACH OF CONTRACT, STATUTORY RELIEF UNDER C.R.S. §§ 10-3-1115 AND 1116, BAD FAITH AND JURY DEMAND** | |

Plaintiff, Landing at Cherry Creek Condominium Association, Inc. ("Landing"), by its undersigned attorneys, for its Complaint against Defendant American Family Mutual Insurance Company ("American Family"), alleges, avers and states as follows:

### NATURE OF THE ACTION

1. Landing brings this action to enforce its rights under the insurance policy issued by American Family Mutual Insurance Company. Landing seeks relief to enforce the appraisal provision of the policy, and asserts claims for breach of contract based upon American Family's failure to pay insurance benefits for damages to property covered by

American Family's insurance policy that exceed the applicable deductible. Additionally, Landing sues to enforce its rights under C.R.S. § §10-3-1115 and 1116 and related laws.

## PARTIES

2. Plaintiff Landing is the owner of commercial residential real property located at 15932-16296 E. Geddes Lane, 15905-16165 E. Geddes Drive, 7213-7253 S. Laredo Street, 7292 Kittredge Street, Aurora, CO 80016 (the "Property").

3. Upon information and belief, Defendant American Family is an insurance company licensed with the State of Colorado, Division of Insurance, engaged in the business of issuing property and casualty insurance policies insuring commercial residential and other properties in the State of Colorado.

## JURISDICTION and VENUE

4. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6. Jurisdiction is proper as to American Family pursuant to C.R.S. § 13-1-124(1)(a), (b), and (d) because American Family conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within the State of Colorado.

7. Venue is proper pursuant to Colo.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

## FACTS COMMON TO ALL COUNTS

8. American Family issued Landing a commercial all risk businessowners insurance policy, Policy Number 05XV756902 ("the Policy") to cover the Property. A certified copy of the applicable Policy is attached hereto as Ex. "A."

9. The Policy was in full force and effect from March 15, 2015 to March 15, 2016.

10. Pursuant to its Policy, American Family agreed to pay for direct physical loss of or damage to the insured premises as a result of perils including wind and hail.

11. Landing paid the premiums due on the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

2

12. On or about August 10, 2015, while the Policy was in full force and effect, the insured premises sustained significant damage from a severe localized hailstorm.

13. Landing timely provided notice of loss to American Family for benefits under the Policy, seeking costs to restore or replace the damage. American Family acknowledged notice of the claims, assigning a series of claim numbers starting with 00-225-137820, *et al.*

14. On or about December 14, 2015, Landing provided notice of its engagement of Impact Claim Services, LLC, ("Impact") to assist in its claim investigation and damage assessment. Landing requested that American Family provide its coverage decision and explanation as soon as possible, and requested a variety of documents related to the claim, including a certified copy of the policy, underwriting reports and all existing photos and documentation regarding the property in order to establish, among other things, the prior condition of the Property that was insured.

15. American Family has not produced any documents evidencing underwriting or loss control inspections at the Property before the August 10, 2015 hail loss which is the subject of this suit.

16. On or about December 21, 2015, Landing requested that American Family provide dates for their initial inspection. On January 7, 2016, Jack LaBonde, Jr., Senior Adjuster for American Family, issued a response via email to Impact and informed them that due to other storm losses, they could not schedule the inspections until the weather cleared.

17. It was not until Impact insisted that an inspection be set to prevent delays and harm to the Insured, that American Family agreed to schedule an inspection, weather permitting.

18. On January 22, 2016, American Family's adjusters John Munoz and Jack LaBonde, Jr., inspected the property with Impact Claim Services.

19. During this inspection, Munoz and LaBonde attributed conditions identified by Impact as having resulted from hail, as something other than hail damage. After applying the adjuster initials as identifying markers to these locations on the Property, samples were collected by Impact and sent to a certified laboratory for scientific testing to determine their cause of origin.

20. On February 18, 1016, American Family's retained consultant, Steven Mack with Case Forensics, inspected the property with Impact Claim Services.

21. During the February 18, 2016 inspection, Mack also attributed the conditions identified by Impact to be hail caused, to have been caused by something other than hail. After applying Mr. Mack's initials as identifying markers to these anomalies, the samples were collected by Impact and sent to a certified laboratory for scientific testing to determine their cause of origin.

22. On February 20, 2016, Impact wrote Mr. LaBonde regarding the February 18 inspection with Stephen Mack. Impact specifically addressed Mr. Mack's statements regarding his definition of "damage." During the inspection, Mr. Mack informed Impact that he was only considering condition if hail caused "visible damage," and that while he agreed that the anomalous conditions that Impact had pointed out were in fact caused by hail, Mack asserted that it was not "damage" because there was no visual damage to the mat of the roofing material. Impact expressed concern about Mr. Mack's method of investigation and requested that Mr. Mack's report be reviewed to ensure that it was consistent with American Family's insuring language within the Policy issued to Landing, as the Policy agrees to pay for all "direct physical damage" to covered property caused by a peril insured against, and provides no exclusions or definitions consistent with Mack's more narrow interpretation of damage. No response to Impact's letter or his concerns regarding the deficient investigation were ever addressed by American Family.

23. On April 18, 2016, nearly three months after their initial inspection, and after several requests for an update on their coverage decision, Mr. LaBonde e-mailed Impact and informed them that the Case Forensics engineering report prepared by Mr. Mack was complete and had acknowledged hail damage but wanted their engineer to look at the remaining 34 buildings of the complex.

24. On April 18, 2016, Impact requested a copy of Mack's Case Forensics report and was advised by Mr. LaBonde that American Family would not share the report until all the buildings had been inspected and estimates had been prepared.

25. On April 19, 2016, Impact contacted Mr. LaBonde and expressed concern over the harm and undue delay that the investigation of the additional 34 buildings would cause, as it had been months since their inspection and no report or claim decision had been provided to Landing. Impact again requested a copy of their Case Forensics report. That same day, Mr. LaBonde responded and maintained that they would not provide a copy of the estimate until all buildings were inspected and their investigation finalized.

26. On May 6, 2016, Impact contacted Mr. LaBonde regarding the status of the claim and advised that Landing was awaiting communication from American Family's engineer to set up the inspection and reminded Mr. LaBonde of the significant concerns with Mr. Mack's investigation, previously brought to their attention in his February 20, 2016 letter. Impact also requested that American Family reconsider its refusal to provide Landing with a copy of the Case Forensics report prepared by Mr. Mack.

27. On May 23, 2016, Stephen Mack began his inspection of the remaining buildings which was expected to continue through May 27, 2016. Impact sent Mr. Mack several emails requesting the status of his investigation and the opportunity to inspect the loss location with him, but received no response.

28. On June 9, 2016, Impact wrote a letter to Mr. LaBonde again requesting an update on a coverage decision and expressing the Insured's concerns regarding Mr. Mack's investigation. Impact also advised that its own complete report would be forthcoming but that American Family's underwriting inspection reports and photographs were still

4

needed to assist the Insured's evaluation, as requested in Impact's December 14, 2015 letter.

29. On June 13, 2016, Mr. LaBonde informed Impact that the inspections had only recently been completed and a "report would follow." The following day, Impact responded to Mr. LaBonde requesting that American Family provide Landing with their coverage decision and a copy of Mr. Mack's report as soon as possible, given the delays that had already taken place.

30. On June 20, 2016, Mr. LaBonde advised Impact that he would be providing Stephen Mack's report on approximately June 29, 2016. On June 29th, Mr. LaBonde advised that the report would be provided the following week.

31. On July 6, 2016, Impact provided American Family with the Insured's Sworn Statement in Proof of Loss along with its Initial Claim Presentation, providing American Family with the extensive information used to arrive at the Insured's determination of the amount of loss, along with a detailed analysis on the samples collected and scientifically tested. This information confirmed that the physical damage conditions asserted by Munoz, Labonde and Mack to be caused by something other than hail, were in fact caused by hailstone impacts and had been incorrectly evaluated by Munoz, Labonde and Mack. The letter also requested, again, American Family's long overdue coverage position.

32. On July 15, 2016, Impact contacted Mr. LaBonde, requesting the coverage decision. Mr. LaBonde informed Impact that he had been on the property that morning, without any notification to the Insured, because they had previously missed a building in their inspection.

33. On July 19, 2016, more than six months after notifying American Family of the claim, Mr. LaBonde requested from the Insured the claims history and identification of prior insurance carriers, asserting that there had been several storms in the area over the past few years. In turn, Impact again requested any evidence in American Family's possession suggesting that the damages may have occurred outside of Landing's policy period with American Family, and again requested any underwriting inspection reports.

34. On July 22, 2016, Impact provided American Family with Landing's loss run reports and again requested the coverage position as well as all underwriting inspection reports.

35. On August 10, 2016, John Munoz, American Family's Claim Field Senior Adjuster, informed Landing that the Proof of Loss was "rejected" because it included replacement of the roof and other items beyond American Family's scope of the loss, advising Landing that using their best practices and the Case Forensics report, American Family had determined that it would only consider a full replacement of the roof if more than fifty percent of the roof is damaged, and only one roof met that requirement.

36. Other than a disagreement with the scope of repairs presented by Landing, American Family provided no other explanation or evidence based in fact to support its rejection of Landing's Proof of Loss.

37. On August 15, 2016, Impact requested that American Family clarify and support its position regarding Landing's Proof of Loss, since while American Family might disagree with that Proof of Loss, there was no proper basis to wholly reject it.

38. On August 16, 2016, Mr. LaBonde informed Impact that a check had been issued to Landing in the amount of $175,526.52 for hail related damages.

39. On September 9, 2016, after repeated requests for information supporting American Family's wholesale rejection of Landing's Proof of Loss, John Munoz provided American Family's Xactimate roof evaluations and advised that American Family would maintain its rejection of Landing's Proof of Loss.

40. On September 29, 2016, in a letter to Mr. Munoz, Impact provided American Family with additional authority and technical information to support Landing's position that American Family's coverage position was incorrect and its investigation deficient.

41. In a letter dated October 12, 2016, Mr. Munoz advised Impact that he agreed that all but one roof has hail damage, that they do not disagree with the roof report prepared by Landing's roof expert, but that there is a difference of opinion on what needs to be replaced and what should be repaired so American Family would be invoking the appraisal clause of the Policy and named its appraiser, Mr. David Perry. American Family imposed other conditions unstated in the Policy to the appraisal process. *See* Ex. "B."

42. On October 21, 2016, Mr. Munoz informed Impact that American Family would be continuing its investigation, not for a re-inspection, but for purposes of appraisal, and would be onsite at the Property on October 26th.

43. On November 16, 2016, a re-inspection of the Property took place with Mr. Munoz, a representative from Affordable Roofing, and Impact Claim Services. During this inspection representatives of Affordable Roofing attributed physical conditions identified by Impact to be hail caused, as something other than hail. After applying the Affordable Roofing's representatives initials as identifying markers to these anomalies, the samples were once again collected by Impact and sent to a certified laboratory for scientific testing to determine their cause of origin.

44. In a letter dated December 6, 2016, Impact requested that American Family withdraw it's the conditions imposed in the demand for appraisal and informed American Family that Landing is owed additional amounts and requested that American Family process payment to their Insured.

45. In a letter dated December 20, 2016, Impact supplemented its presentation to American Family, informing it that laboratory testing of the sample collected during its joint inspection with Affordable Roofing, confirmed damage by hailstone impact. Impact

6

summarized for American Family that to date, scientific testing had repeatedly confirmed that American Family, its retained engineers, and consultants had all failed to accurately evaluate and identify hail caused damages to the property.

46. Following objection by Landing to the appraisal conditions unilaterally demanded by American Family, on January 12, 2017, Mr. Munoz provided Impact with a revised appraisal demand, and advised that they had removed the language creating additional unagreed conditions to appraisal from their October 12th letter. *See* Ex. "C."

47. On May 9, 2017, Landing objected to the selection of Mr. Perry as appraiser for American Family, citing his conflicts as legal counsel for the Company and long-standing dependency on generating his livelihood from employment by or derived from the company. *See* Ex. "D." American Family thereafter declined to remove Mr. Perry as its appraiser, and continued an objection to selection of Mr. Keys by Landing. *See* Ex. "E."

48. On August 3, 2017, Landing renewed its objection to American Family's selection of its attorney as a purportedly "impartial" appraiser under the Policy, but compromised its choice of Mr. Keys as its appraiser under protest, reserving its rights in order to mitigate the continuing harm from American Family's ongoing breaches of its duties under the Policy. *See* Ex. "F."

49. On August 8, 2017, American Family finally agreed to remove Mr. Perry as its appraiser, without conceding that its attempt to appoint its current and former attorney as an "impartial" appraiser was improper. Thereafter, Landing corresponded with American Family to disclose recent legal authority making clear that Mr. Keys should not be disqualified as Landing's appraiser under the "competent and impartial" standard of the Policy, and supplied American Family with the relevant legal authorities. Landing requested that American Family withdraw its objection to Mr. Keys as Landing's appraiser and agree to move forward. *See* Ex. "G." American Family made no response to change its position against Mr. Keys.

50. Landing has fulfilled all other duties required of it under the Policy after discovery of the loss, and performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, has been excused from performance by the acts, representations and/or conduct of American Family.

## FIRST CLAIM FOR RELIEF
### PETITION TO ENFORCE APPRAISAL

51. Landing re-alleges paragraphs 1-50 as though fully set forth herein.

52. The Policy contains an appraisal provision providing an alternative dispute resolution process upon demand by either party in the event of a disagreement as to the amount of loss. *See* Exhibit A hereto, Policy, Part E. Property Loss Conditions, § 2. Appraisal (p. 15 of 35).

7

53. American Family failed to properly investigate and adjust the loss pursuant to the Policy, and as a consequence of its nonperformance the parties disagree as to the amount of the loss sustained as a result of the acknowledged loss event.

54. The Policy contains the following appraisal provision:

"2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim."

Ex. A, Part E. Property Loss Conditions, § 2. Appraisal (p. 15 of 35).

55. American Family demanded appraisal, and, reserving its rights to mitigate its damages as a result of American Family's existing breach, Landing agreed to move forward into appraisal consistent with the terms and conditions of the Policy.

56. American Family initially asserted the right to name as it appraiser its former in-house attorney, David Perry, who after leaving direct employment of American Family continued to actively represent American Family as outside legal counsel in dozens, if not hundreds of lawsuits filed in the State of Colorado. Landing objected to selection of Mr. Perry as an appraiser since he could not be, by definition as former and current legal counsel to American Family, "impartial."

57. In turn, Landing selected and appointed as its appraiser George Keys. American Family initially objected, then agreed on the condition that it be allowed to use its former and current attorney, Mr. Perry, as its appraiser, and then reasserted an objection to Mr. Keys as Landing's chosen appraiser. In order to be able to move forward without further delay, Landing initially abandoned its selection of Mr. Keys since American Family would not move forward without that concession.

58. Thereafter, upon learning of recent legal decisions interpreting the Policy's qualification standard of "competent and impartial" and making clear that Mr. Keys satisfied that standard, Landing renewed its selection of Mr. Keys. Ex. "G."

59. American Family has not withdrawn its objection to Mr. Keys as Landing's appraiser.

60. Under the Policy, Landing is entitled to performance of the appraisal provision as an alternative dispute resolution means to determine the scope of the loss event (causation of damage) and the amount and value of the cost to repair or replace the damaged property.

61. American Family is obligated under the Policy to move forward into appraisal under the circumstances, without insertion of additional unilaterally imposed conditions, and honor Landing's selection of its "competent and impartial" appraiser.

**WHEREFORE**, Plaintiff Landing at Cherry Creek Condominium Association, Inc., respectfully prays this Court Order Defendant American Family Mutual Insurance Company to:

(a) honor the Policy by engaging in proceedings in accordance with the appraisal provision of the Policy;

(b) reimburse the Plaintiff for pre-judgment interest on the Award from the date to be determined by this Court, attorneys' fees in accordance with applicable law, and expenses incurred and to be incurred in prosecuting this action against the Defendant;

(c) abate further proceedings in the lawsuit pending issuance of an appraisal award; and

(d) grant Plaintiff such other and further relief as this Court may deem proper.

## SECOND CLAIM FOR RELEIF
## BREACH OF CONTRACT

62. Plaintiff re-alleges paragraphs 1-50 and 52-61 as though fully set forth herein.

63. Pursuant to the Policy, American Family has a contractual obligation to investigate, adjust and pay the full amount of Landing's damages from the insured event, including the costs to repair and/or replace the damage.

64. American Family breached the Policy by failing to properly and timely adjust the loss with Landing.

65. American Family breached the Policy by failing to pay all benefits due and owing under the Policy for the claim.

66. As an anticipated and direct result of American Family's actions, Landing has:

a) not received all Policy benefits owed to indemnify for the entire loss;

b) incurred and will incur in the future costs to repair, restore and/or replace the significant property damage;

c) suffered and will continue to suffer incidental and consequential damages; within the contemplation of the parties in the event of breach; and

d) suffered and will continue to suffer by incurring other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff Landing at Cherry Creek Condominium Association, Inc., respectfully requests that this Court enter Judgment against Defendant American Family Mutual Insurance Company for damages, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### UNREASONABLE DELAY IN VIOLATION OF
### C.R.S §§ 10-3-1115 and 1116

67. Plaintiff re-alleges paragraphs 1-50, 52-61, and 63-66 as though fully set forth herein.

68. Under Colo. Rev. Stat. § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

69. American Family has unreasonably delayed payment to Landing. Measured against the reasonable and objective industry standards for claim handling and payment, American Family's actions have unreasonably delayed payment of the loss and damage.

70. Colo. Rev. Stat. § 10-3-1116 authorizes a first-party claimant, such as Landing, whose claim for payment of benefits has been unreasonably delayed or denied, to bring an action in a district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

**WHEREFORE**, Plaintiff Landing at Cherry Creek Condominium Association, Inc., respectfully requests that this Court enter Judgment against Defendant American Family Mutual Insurance Company for damages, including two times the covered benefit pursuant to applicable law, reasonable attorneys' fees and costs, and such other relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
### COMMON LAW BAD FAITH

71. Plaintiff re-alleges paragraphs 1-50, 52-61, and 63-66 as though fully set forth herein.

72. Under the insurance policy, American Family owes its insured the duty of good faith and fair dealing.

73. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

74. Among other circumstances, American Family has committed unfair claim settlement practices including, without limitation:

   a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy it wrote and issued;
   b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
   c) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
   d) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
   e) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
   f) Misrepresenting the terms and conditions of the Policy in an attempt to influence the insured to settle for less than all benefits reasonably afforded under the Policy for the subject loss and damage;
   g) Encouraging its claim representatives to engage in unfair claims settlement practices against its insured, thereby violating applicable laws and regulations of the State of Colorado.

75. American Family has committed such actions willfully and with such frequency as to indicate a general business practice.

76. As a direct and proximate result of American Family's actions, Landing has:

   a) Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;

   b) Suffered and will continue to suffer damages as approximate result of the misconduct alleged; and

   c) Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Landing at Cherry Creek Condominium Association, Inc., respectfully requests that this Court enter Judgment against Defendant American Family Mutual Insurance Company for damages, costs, pre and post judgment interest, attorneys' fees, expert witness fees, two times the covered benefits pursuant

to applicable law and such other and further relief as the Court deems just and proper.

**Plaintiff Demands a Jury Trial of All Issues So Triable.**

Dated this 10th day of August, 2017.

Respectfully submitted,

By: s/ Christopher N. Mammel
Christopher N. Mammel, Esq. #10980
Merlin Law Group, P.A.
999 18th Street, Ste. 3000
Denver, CO 80202
Phone: (303) 357-2374
Facsimile: (303) 357-2377
E-mail: cmammel@merlinlawgroup.com